IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CLAUDIO POLO CALDERON and JONATHAN POLO ECHEVARRIA, **Plaintiffs,** v. CORPORACION PUERTORRIQUEÑA DE SALUD and JOAQUIN RODRIGUEZ-BENITEZ, **Defendants.** | **Civil No.** 12-1006 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

On September 30, 2013, defendants filed a motion *in limine* requesting that the Court exclude all text messages sent and received between plaintiff Jonathan Polo-Echevarria ("Polo") and prpng@hotmail.com or "Siempre Atento" at trial. (Docket No. 92.) They claim that Polo's own admission that certain text messages were deleted from his phone precludes the use of <u>any messages</u> whatsoever, (Docket No. 92), and they submit that the "complaint must be dismissed with prejudice since the case is based on those printed text messages . . . ." (Docket No. 128 at p. 10.)

While their motion *in limine* was pending, defendants received documents in response to an *ex-parte* subpoena to T-Mobile that they had issued — unbeknownst to plaintiffs or the Court — on August 23, 2013. The documents T-Mobile produced in response to the subpoena contain Polo's phone and text messaging records from December 1, 2010 to March 1, 2011. (Docket No. 158-1.) Defendants informed

Civil No. 12-1006 (FAB)                                              2

the Court of the phone and text logs in a supplemental motion *in limine*, in which they again request that plaintiffs' case be dismissed due to spoliation of evidence and plaintiffs' bad faith.[1] (Docket Nos. 143 and 167.)

**I.   Plaintiffs' Motion to Quash**

As a preliminary matter, plaintiffs argue that defendants' T-Mobile subpoena should be quashed as procedurally defective for failure to give pre-service notice. (Docket No. 144 at p. 2.) Pursuant to Federal Rule of Civil Procedure 45(b)(1), which was in effect at the time defendants issued the subpoena to T-Mobile, a subpoena commanding the production of documents and electronically

---

[1] Although defendants received the requested records on October 9, 2013, defendants waited to produce the records to plaintiffs until December 23, 2013, just prior to filing the pretrial report. Defendants' proposed reason for not producing the responsive documents when they received them is that they intended to limit the use of the evidence "for impeachment purposes." (Docket No. 143 at p. 3.) Pursuant to Fed. R. Civ. P. 26(a)(3)(A), a party need not provide the other parties with information about the evidence that it may present at trial if it intends to use the evidence "solely for impeachment." Evidence that is at least in part substantive, meaning that it pertains to the truth of a matter to be determined by the jury, does not fall within the "solely for impeachment" exception of Rule 26(a)(3), and must be produced pursuant to Rule 26. See Klonoski v. Mahlab, 156 F.3d 255, 270 (1st Cir. 1998) (finding written excerpts of a letter to be substantive evidence "because, separate and apart from whether they contradicted Dr. Klonoski's testimony, they tended to establish the truth of a matter to be determined by the trier of fact," and concluding that the letters should have been produced during discovery) (internal quotations and citation omitted). Because defendants did not timely produce the documents to plaintiffs, defendants would normally be limited to using the same at trial for impeachment purposes only. As discussed in detail below, however, an examination of the T-Mobile records leads the Court to conclude that the effect of plaintiff Polo's spoliation — defendants' inability to invoke Federal Rule of Evidence 106 — warrants an adverse inference regarding the missing messages.

Civil No. 12-1006 (FAB)                                                3

stored information requires that notice be served on each party before service.  The Advisory Committee Notes have defended similar provisions as attempting to "achieve the original purpose of enabling the other parties to object or to serve a subpoena for additional materials . . . ."  See Fed.R.Civ.P. 45(a)(4).

Defendants issued the subpoena to T-Mobile before the discovery deadline; had plaintiffs objected, the Court would probably not have quashed defendants' subpoena — just as it did not quash plaintiffs' subpoena to attain Rodriguez's AT&T records. (See Docket Nos. 59 & 70); (See also Docket No. 61) (plaintiffs' admission that "[t]he fact that there were telephone conversations between plaintiff and defendant Rodriguez is certainly relevant and fair game here.  It is corroboration of plaintiff's testimony"). Thus, quashing the subpoena now for failing to give timely notice would only result in its re-issuance.  Given that trial is less than two weeks away, a re-issuance would promote inefficiency, delay, and undue costs on the litigants.  See, e.g. Richardson v. Axion Logistics, LLC, 2013 U.S. Dist. LEXIS 144440 (M.D. La. Oct. 7, 2013).

Furthermore, the Court finds defendants' late disclosure of the T-Mobile records to be harmless to plaintiffs.  Plaintiffs do not advance any argument demonstrating prejudice resulting from the late production of the records, and the Court finds no basis for concluding either that the defendants are attempting to engage in trial by ambush or that the T-Mobile information otherwise affects plaintiffs' ability to litigate their case.  Cf. Klonoski v.

Mahlab, 156 F.3d 255, 270-71 (1st Cir. 1998) (finding defendants' late disclosure of letters significantly prejudiced plaintiff because "it was devastating to his ability to succeed with the jury"). To the contrary, the records merely reveal information personally known to Polo, and the plaintiffs will have had more than one month to review the records before going to trial. (Docket No. 144 at p. 2.) Accordingly, the Court **DENIES** plaintiffs' motion to quash the T-Mobile subpoena.

## II.  Defendants' Motions *in Limine*

Arguing that Polo engaged in spoliation and that the case therefore must be dismissed, defendants direct the Court to the T-Mobile records. They point out that Polo received numerous messages — the Court counts 22 messages from prpng@hotmail.com between December 31, 2010 and January 7, 2011 and 16 messages from prpng@hotmail.com between February 4, 2011 and February 7, 2011 - that were not among the messages plaintiffs produced in discovery. (Docket No. 158-1 at pp. 90-94.) That estimate does not include the numerous text messages that Polo sent in response. (See Docket No. 167 at pp. 7-10.)

The Court finds that spoliation occurred in this case. A party has a general duty to preserve relevant evidence once it has notice of or reasonably foresees litigation; failure to preserve the evidence constitutes spoliation. Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 399 (1st Cir. 2012); see also Perez-Garcia v. P.R. Ports Auth., 871 F. Supp. 2d 66, 69 (D.P.R. 2012) (citing Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216

Civil No. 12-1006 (FAB)                                                 5

(S.D.N.Y. 2003)).  "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  Silvestri v. Gen. Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001).  It cannot be disputed that all messages and phone calls between Polo and Rodriguez, and Polo and the prpng@hotmail.com and "Siempre Atento" users, are relevant to plaintiffs' lawsuit.  (Docket Nos. 61 & 145.)  Polo admits to forwarding some messages received from prpng@hotmail.com and "Siempre Atento" to himself so that he "would be able to print" them, (Docket No. 98-1 at p. 44), and the record reflects that he did so as early as 12:09:46 p.m. on February 8, 2011.  (Docket No. 92.)  The T-Mobile records also reveal that by that time, Polo had contacted his attorney.  (Docket No. 158-1 at p. 65.)  At a bare minimum, Polo's decision not to forward or save the unproduced texts and photos from prpng@hotmail.com constitutes "conscious abandonment of potentially useful evidence" that indicates that he believed those records would not help his side of the case.  Nation-Wide Check Corp. v. Forest Hills Distribs., Inc., 692 F.2d 214, 219 (1st Cir. 1982).  The record thus indicates that Polo reasonably foresaw litigation and had a duty to preserve relevant evidence, and spoliation occurred.

     Once spoliation has been established, the Court enjoys considerable discretion over whether to sanction the offending party.  See Booker v. Mass. Dep't. of Pub. Health, 612 F.3d 34, 46 (1st Cir. 2010).  The only sanction defendants identify in their

motions *in limine* is dismissal of the entire lawsuit; that sanction is traditionally reserved, however, for the most extreme of cases. Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006) ("[I]t has long been our rule that a case should not be dismissed with prejudice except when a plaintiff's misconduct is particularly egregious or extreme."). The Court regards an adverse inference instruction[2] as the most appropriate sanction in this case. Pursuant to that doctrine, "a trier of fact may (but need not) infer from a party's obliteration of a document relevant to a litigated issue that the contents of the document were unfavorable to that party." Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998).

To qualify for an adverse inference instruction, defendants must "proffer[] evidence sufficient to show that the party who destroyed the document knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim." Booker v. Mass. Dep't of Pub. Health, 612 F.3d 34, 46 (1st Cir. 2010). The Court finds that

---

[2] "This permissive negative inference springs from the commonsense notion that a party who destroys a document (or permits it to be destroyed) when facing litigation, knowing the document's relevancy to issues in the case, may well do so out of a sense that the document's contents hurt his position." Testa, 144 F.3d at 177.

The First Circuit Court of Appeals has indicated that such an instruction usually is appropriate "only where the evidence permits a finding of bad faith destruction." United States v. Laurent, 607 F.3d 895, 902 (1st Cir. 2010). It recognizes, however, that "unusual circumstances or even other policies might warrant exceptions." Id. at 902-03; See also Nation-Wide Check Corp. v. Forest Hills Distrib., Inc., 692 F.2d 214, 219 (1st Cir. 1982).

Civil No. 12-1006 (FAB)                                                7

defendants easily meet their burden.  It is reasonable to conclude that the mere act of Polo forwarding himself some messages from prpng@hotmail.com on February 8, 2011 — the same day that he submitted a sexual harassment complaint to CPS — reveals his understanding that those messages were relevant to a potential claim against Rodriguez.  Even if Polo's behavior does not amount to bad faith, his selective retention of certain messages over the 38 messages that had been received from prpng@hotmail.com and his respective responses, indicates his belief that the records would not help his side of the case.  See Nation-Wide Check Corp., 692 F.2d at 219.  Thus, Polo knew of both the potential for litigation and the potential relevance of the unproduced messages to that claim.  His failure to preserve those messages severely prejudices defendants by precluding a complete review of the conversations and pictures sent between Polo and prpng@hotmail.com. It also prevents defendants from introducing, pursuant to Fed. R. Evid. 106, other writings "that in fairness ought to be considered at the same time" as the messages that plaintiffs seek to introduce at trial.  Finally, it impedes defendants from offering evidence pertinent to their defense that prpng@hotmail.com's identity cannot be determined — and is not defendant Rodriguez.  Due to those circumstances, and in light of the First Circuit Court of Appeals' indication that "above all else[,] an instruction must make sense in the context of the evidence," Laurent, 607 F.3d at 903, the Court will give an adverse inference instruction at trial against

plaintiff Polo regarding the more than 38 missing communications between Polo and prpng@hotmail.com.

### III. Conclusion

For the reasons discussed above, the Court **DENIES** plaintiffs' motion to quash, (Docket No. 144), and **GRANTS IN PART and DENIES IN PART** defendants' motions *in limine*, (Docket Nos. 92 and 167).  An adverse inference instruction regarding the 24 missing communications between Polo and prpng@hotmail.com, and Polo and Rodriguez, will be given at trial.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 16, 2014.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
United States District Judge